IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TIMOTHY M. CANNON,

                    Plaintiff,

        v.                                                      OPINION and ORDER

BRITTANY WIESE,                                                 24-cv-226-wmc

                    Defendants.

---

Plaintiff Timothy Cannon, proceeding without counsel, contends that Deputy Brittany Wiese used excessive force against him in violation of the Fourteenth Amendment while breaking up his fight with another inmate at La Crosse County jail. Defendant moves for summary judgment and for the reasons below, the motion will be granted.

UNDISPUTED FACTS[1]

On September 10, 2023, Timothy Cannon was an inmate at La Crosse County jail when he was allegedly attacked by another inmate in the dayroom. Four jail officers responded to the fight, including the named defendant, Brittany Wiese. When officers arrived, Cannon and the other inmate were already fighting under a stairway in the dayroom, with several additional inmates watching. The officers yelled "break it up" to

---

[1] Unless otherwise indicated, the following facts are undisputed and drawn from the parties' proposed findings of facts and responses, as well as video and audio footage from a jail security camera and two of the responding officer's body cameras. (Dkt. ##47-1, 47-2.) The court notes that plaintiff neither responded to defendant's proposed findings of fact as required by this court's summary judgment procedures, nor submitted all the evidence cited in support of his own, proposed findings of fact. However, given plaintiff's unrepresented status, the court has considered plaintiff's filings and drawn all reasonable inferences in his favor.

defendant and his opponent, as well as ordered the other inmates back to their cells. Unfortunately, both orders were disregarded.

As Cannon and the other inmate continued to fight, they fell to the ground with Cannon on top, still punching the other inmate. Two officers then pulled Cannon off the other inmate, who was being held by a third officer. Initially, Cannon had only been partially separated from the other inmate, as he continued to have his arms wrapped around the other inmate. However, Officer Wiese then grabbed Cannon's left leg, pulling him across the floor to separate the two inmates completely.

Even then, Cannon continued to yell, threaten and grab toward the other inmate, and to grab onto another officer's arm with his left hand in the scuffle. Officer Wiese grabbed Cannon's left arm to remove it from that officer's arm, as well as restrain Cannon's arm behind his back. As Wiese was directing the left arm behind his back, Cannon continued to resist, then yelled that his arm was "out of place," after which Wiese immediately stopped moving the arm, except to place it on the ground.

Once the two inmates were fully separated and secured, the spectating inmates were again ordered back to their cells, while medical staff was directed to the dayroom to evaluate Cannon. Cannon told both the officers and a jail nurse that he thought he had hit his shoulder on the stair rail. After examining Cannon, the jail nurse recommended that he be taken to the hospital, where Cannon was diagnosed with a dislocated and

fractured shoulder that would ultimately require surgery to repair.[2]  Cannon continues to

suffer from ongoing physical pain and mental distress as a result of the incident.

OPINION

Plaintiff is proceeding on a single claim in this lawsuit: defendant Wiese used

excessive force in violation of his Fourteenth Amendment rights when she pulled on his

left arm in an attempt to restrain it.[3]  Defendant contends that plaintiff's claim fails because

her use of force was reasonable under the circumstances or, at the very least, is protected

by qualified immunity.[4]  On a motion for summary judgment, the question is whether there

are any genuine factual disputes that could make a difference to the outcome of the case,

or, stated another way, whether a reasonable jury could find for the nonmoving party, after

drawing all reasonable inferences in that party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477

---

[2] Defendant submitted an expert report from Dr. Amin Afsari, an orthopedic surgeon, who opines that defendant did not cause plaintiff's shoulder injuries, which seems likely given how he reports his arm being "out of place" in what looks like a fairly standard attempt at a restraint hold by Deputy Wiese. (Dkt. #48). *See* J. Kao, M.D., et al., *Incidence of recurrence after shoulder dislocation: a nationwide database study*, Vol. 27 Journal of Shoulder and Elbow Surgery, Issue 8, pp. 1519-25 (August 2018).  However, because the court ultimately concludes that a jury would have to find defendant's use of force was objectively reasonable under the totality of the circumstances, the expert report is immaterial to the outcome of this case and will not be addressed further.

[3] At the screening stage of this case, the court denied plaintiff's request to proceed on additional federal and state law claims against several, other defendants, including another jail officer, the jail captain, the La Crosse County Sheriff, the City of La Crosse and La Crosse County.  (Dkt. #20.)  For reasons explained in the screening order, plaintiff's allegations were not sufficient to state a claim for relief against any of those defendants.  Plaintiff subsequently filed a proposed *sixth* amended complaint, seeking to revive his claims against the dismissed defendants.  (Dkt. #28.)  That motion will be denied because his proposed amended complaint *still* fails to state any viable claim for relief against those other defendants.

[4] Because the court concludes that no reasonable jury could find that defendant used excessive force in violation of the Fourteenth Amendment, the court need not separately address defendant's qualified immunity defense.

U.S. 242, 248 (1986); *Loudermilk v. Best Pallet Co., LLC,* 636 F.3d 312, 314-15 (7th Cir. 2011); *Montgomery v. American Airlines, Inc.,* 626 F.3d 382, 389 (7th Cir. 2010).

Because he was a pretrial detainee at the time of the incident, plaintiff's claim is governed by the Fourteenth Amendment. *Miranda v. County of Lake,* 900 F.3d 335, 350-53 (7th Cir. 2018); *Ortiz v. City of Chicago,* 656 F.3d 523, 530 (7th Cir. 2011). Jail staff violates the Fourteenth Amendment if their actions are "objectively unreasonable" under the totality of the circumstances. *Kingsley v. Hendrickson,* 576 U.S. 389, 396-400 (2015). This determination is to be made "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.* at 397.

In particular, courts must "account for the legitimate interests that stem from the government's need to manage the facility in which the individual is detained, appropriately deferring to policies and practices that in the judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional security." *Id.* (internal quotation marks and alterations omitted). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Hudson v. McMillian,* 503 U.S. 1, 9 (1992). Among others, relevant factors to be considered from the perspective of an objective correctional officer include:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Kingsley,* 576 U.S. at 397 (citations omitted).

4

When considering those factors here, along with the benefit of fairly definitive video and audio footage of the incident, an impartial jury would be compelled to find defendant's use of force was objectively reasonable. In particular, jail officers responding to a rapidly deteriorating situation were immediately confronted with a serious safety and security risk, including two inmates brawling in an open area despite being ordered to stop, near other inmates who were observing and refusing to disperse.[5] Thus, any objective officer would have taken similar steps to take control of the situation by separating and restraining the fighting inmates while ordering others to go to their cells. When verbal commands were unsuccessful, an objective officer would also have joined the other jail officers in using physical force to stop the fight.

Even after the two inmates were separated, a reasonable officer likewise would have concluded that it was necessary to restrain plaintiff because he continued wrestling against control, as well as attempting combative movements and making death threats, while grabbing another officer's arm. Given these circumstances, it was reasonable for defendant to first pull plaintiff off the other inmate by his leg, and second to grab his arm to remove his grip from another officer, then attempt to restrain it behind his back. Finally, from the audio and video footage, no reasonable jury could find that defendant's actions were overly aggressive or done with an intent to harm. To the contrary, she remained professional throughout the encounter, appears to have used the amount of force necessary to gain

---

[5] In fairness, the reaction of the other inmates was essentially passive, mainly watching the fight unfold between the two inmates, then between those same two inmates and the officers. Still, by remaining as onlookers, rather than following orders to go to their cells, the danger of other inmates joining in (who outnumber the officers) cannot be discounted.

plaintiff's compliance, and when plaintiff continued to resist actively, she reasonably pulled his arm back with both wrists in an attempt to control it.  Plus, as soon as plaintiff reported his shoulder was out of place, she immediately released his arm.   Under these circumstances, no reasonable jury could find that defendant used excessive force.  *E.g., Boyd v. Pollard*, 621 Fed. App'x 352 (7th Cir. 2015) ("no juror who viewed the video could reasonably conclude -- given the professional behavior of the guards" and type of injury sustained by the plaintiff that the guards used excessive force in the manner plaintiff alleged).[6]

Plaintiff's negligence claim against defendant fails for the same reason.  A negligence claim under Wisconsin law includes the following four elements: (1) a breach of (2) a duty owed (3) that causes (4) harm to the plaintiff.  *Paul v. Skemp*, 2001 WI 42, ¶ 17, 242 Wis. 2d 507, 625 N.W.2d 860.  Based on the undisputed facts as shown in the video and audio footage, no reasonable jury could find that defendant breached any duty to plaintiff.  Rather, she acted appropriately to help restrain a resisting inmate.  To the extent the maneuver may have been imperfect, no officer can be held liable under such a high standard while trying to gain compliance.  Accordingly, the court will grant summary judgment to defendant in full.

---

[6] In *Boyd*, the plaintiff alleged that guards, when outside the camera's view, had attacked him by slamming his body to the floor and issuing numerous blows to his head and face.  621 Fed. Appx. at 356.  However, the plaintiff's injury – a small laceration above his eye – was minimal.  Although plaintiff's injury in this case was more substantial, no juror could conclude based on defendant's conduct or use of force captured on the video that she used excessive force.

ORDER

IT IS ORDERED that:

1.  Plaintiff Timothy Cannon's motion for leave to amend his complaint (dkt. #28) is DENIED as futile.

2.  Defendant Brittany Wiese's motion for summary judgment (dkt. #42) is GRANTED.

3.  The clerk of court is directed to enter judgment for defendant and close this case.

Entered this 9th day of June, 2026.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge